UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION


DEMETRIUS NICHOLAS BATTLE,    )
    )
       Petitioner,    )
    )
       vs.    )        No. 4:06CV104 DJS/AGF
    )
DON ROPER,    )
    )
       Respondent.    )

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on the petition of Missouri state prisoner,

Demetrius Battle, for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The action

was referred to the undersigned Magistrate Judge under 28 U.S.C. § 636(b) for

recommended disposition. For the reasons set forth below, the Court recommends that

federal habeas relief be denied.

Petitioner was convicted by a jury on May 17, 2001, of one count of second-

degree murder and one count of armed criminal action. The charges arose out of the May

10, 1998 shooting death of King Wade Jones in St. Charles County, Missouri. Petitioner

was sentenced to concurrent terms of life imprisonment and 30 years, respectively. The

convictions and sentences were affirmed on direct appeal, and Petitioner was denied state

postconviction relief. In the present action, Petitioner asserts that his conviction was

obtained in violation of his double jeopardy rights. Petitioner also asserts that his trial

counsel rendered constitutionally ineffective assistance in numerous ways, including but not limited to counsel's failure to call a certain witness, to seek the exclusion of the testimony of the prosecution's key witness (Kim Alexander), to pursue a motion for change of judge, to object to demonstrative evidence by the prosecution's firearms expert, and to object to a comment by the prosecutor in closing argument that went beyond the record. Petitioner also claims that direct appeal counsel was ineffective in failing to raise two claims on appeal: the prosecutor's improper use of Petitioner's statements which had been ordered excluded and of the demonstrative evidence of the firearms expert.

Respondent argues that habeas relief should be denied because several of Petitioner's claims were procedurally defaulted in state court, and the claims that are properly before this Court were reasonably adjudicated by the state courts.

## BACKGROUND

### Trials

Petitioner was initially charged on May 10, 1998, with first-degree murder and armed criminal action. (Resp. Ex. 6.) An "amended second information" was eventually filed charging the same crimes and adding that Petitioner was a prior offender. (Resp. Ex. 7 at 5-7.) The jury, which was instructed on first-degree murder, second-degree murder, and armed criminal action, found Petitioner guilty of second-degree murder and armed criminal action. On May 14, 1999, Petitioner was sentenced to concurrent terms of imprisonment for life and 30 years, respectively. On November 21, 2000, the Missouri Court of Appeals reversed the convictions and remanded the case for a new trial because

the trial court had failed to instruct the jury on the lesser included offenses of voluntary manslaughter and involuntary manslaughter. (Resp. Ex. 13.)

A second trial -- the trial at issue in the present case -- was set for May 14, 2001. On February 15, 2001, defense counsel filed a motion for change of judge, but on February 23, 2001, defense counsel filed a memorandum stating that she was withdrawing the motion after reconsideration of State v. Sexton, 929 S.W.2d 909 (Mo. Ct. App. 1996).[1] (Resp. Ex. 6 at 24, 26.) The State did not amend the second amended information prior to the second trial. Before the venire panel was brought in (on May 14, 2001), defense counsel noted Petitioner's prior acquittal of the first-degree murder charge and asked the court just to say "murder" and armed criminal action when telling the venire the charges for which Petitioner was standing trial. The court agreed and informed the venire accordingly.

In affirming Petitioner's convictions of second-degree murder and armed criminal action, the Missouri Court of Appeals summarized the evidence presented at the second trial as follows. This Court's review of the record satisfies the Court that this summary is accurate and fair.

> On May 10, 1998, defendant went to a club in St. Louis. Defendant's girlfriend, Kim Alexander, was at the club. King Wade Jones, Alexander's former boyfriend and father of her child was also at the club. Jones gave defendant dirty looks and nudged him. When the club closed

---

[1] This case held that when a conviction is overturned on appeal and the case is remanded for retrial, the defendant does not get a new window of time in which to request an automatic, or peremptory, change of judge.

defendant and Alexander left together in defendant's car and began driving towards defendant's home. Shortly thereafter, Jones drove from the club and caught up with defendant and Alexander on the highway. Jones pulled up beside the couple and motioned for Alexander to roll down the window. Jones then swerved toward the couple but did not hit the car. Jones followed the couple to defendant's home and parked his car behind defendant's car.

Defendant went inside his home and Alexander stayed in the car. Jones approached defendant's car and asked why he could not take their son out of town and what her problem was. Alexander told Jones she wanted him to leave and Jones slapped her face. Jones then got in his car and began to leave. Defendant came out of the house with a [.22 caliber semi-automatic] gun. According to Alexander, defendant walked up to Jones's car and "shot him in the head." Alexander remembered hearing more than one shot but was unsure exactly how many shots were fired. Alexander began struggling to get the gun away from defendant. When Alexander got the gun from defendant, she ran into defendant's home, hid and called 911. Defendant told the first officer to arrive that he had an argument with his girlfriend and did not tell the officer about the shooting. The first officer left but two more officers arrived. Defendant again stated he had an argument with his girlfriend and did not tell the officers about the shooting. The officers went inside defendant's home to check on Alexander and additional officers discovered Jones's body in the car. Defendant told police he did not know how Jones was injured and did not know what happened.

Jones suffered four gunshot wounds. One bullet entered the left cheek of Jones's face, a second bullet grazed Jones's left shoulder, and two other bullets entered Jones's lung. The bullets entering Jones's lung were lethal wounds.

*      *      *

[D]efendant testified that Jones tried to run him off the road, he went inside his house to get a gun to scare Jones away, the first shot occurred when Jones grabbed the gun, he fired the second and third shots after Jones lunged for the car's glove box and the fourth shot occurred when the gun hit the car "door sill" during his struggle with Alexander for the gun.

(Resp. Ex. 14 at 2-3.)

- 4 -

To the above, the Court adds the following facts, which are pertinent to Petitioner's claims herein. Defense counsel sought to call as witnesses Christopher Whitbey and Heather Buchek, whom the court had excluded in the first trial. Whitbey would have testified that on an occasion in 1997 in the bar in question, Petitioner asked him to " watch his [Petitioner's] back" with reference to Jones because Jones had threatened Petitioner because Petitioner was dating Alexander. Buchek would have testified that she had witnessed confrontations between Jones and Alexander in the past, including an incident in which Jones burned a hole in Alexander's shirt with a cigar, and that she thought Petitioner was present for some of these incidents, but she was not sure if Petitioner had actually seen any of them, although he might have heard about them. The court ruled that Whitby's testimony was about an incident too remote in time and Buchek's testimony was too vague on whether Petitioner knew about the incidents. (Resp. Ex. 3 at 410-30.)

After Alexander testified for the state, defense counsel cross-examined her with statements she had made at a preliminary hearing on June 11, 1998, and at the first trial. Defense counsel elicited that in earlier statements, Alexander had said that before the shooting, she and Jones were fighting, with Jones grabbing her shirt and neck, at which point Petitioner came out and asked Jones to leave several times in a frightened voice. Defense counsel further elicited that Alexander also previously had stated under oath that when Jones was getting in his car, Jones saw the gun in Petitioner's hand and tried to grab it before the first shot. (Resp. Ex. 1 at 64-73.)

Petitioner testified that when he came outside of the house with the gun, he saw that Jones had his hand around Alexander's throat and that Alexander was screaming and trying to get away. Petitioner testified that he pointed the gun at Jones and told him to leave. When Jones got into his car, Petitioner let his guard down and at that point Jones reached out of the window of the car and grabbed the clip (magazine) of the gun (which apparently protruded from the body of the gun) and the gun went off. Jones lunged for the glove compartment and Petitioner, thinking Jones was going for a weapon, shot Jones two times. According to Petitioner, Alexander then tried to grab the gun from him, causing the magazine to strike the door sill of the car and come off the gun, and causing the gun to discharge again. Id. at 469-82. The record indicates that when police surveyed the crime scene, the magazine of the gun, some shell casings, and some live bullets were in the car or on the ground by the door of the car. (Resp. Ex. 2 at 235-43.)

At this point in the trial, the attorneys referenced at a bench conference a pre-trial court ruling precluding Petitioner from introducing certain self-serving statements Petitioner had made to the police. Defense counsel assured the court that these statements would not be introduced. Id. at 488-89. During cross-examination of Petitioner, the state elicited that Petitioner had told the investigating officer that there were two guns at his residence, other than the murder weapon. Petitioner then testified that the guns belonged to other people. (Resp. Ex. 3 at 514.) Also during cross-examination of Petitioner, the prosecutor engaged Petitioner in a demonstration of

Petitioner's version of how Jones grabbed the gun and how the clip of the gun dislodged. Defense counsel's request to strike the demonstration was overruled.  <u>Id.</u> at 524-27.

The transcript reveals that during rebuttal, the state called a firearms expert who testified that she showed the police that bullets would not shake out of the clip (magazine) of the murder weapon, as Petitioner had suggested.  On cross-examination, defense counsel asked this witness to try to recreate the impact to the gun from it hitting the car door, as Petitioner had testified, and the witness twice dropped/threw the magazine with dummy cartridges in it to the floor, with no shells coming out.  <u>Id.</u> at 578-80.

In the state's closing argument the prosecutor told the jury, "we can show you photos of Kim's neck," to support the state's argument that Jones was not strangling Alexander when Petitioner came out of the house with the gun.  (Resp. Ex. 4 at 655-56.) In fact, no such photos had been introduced into evidence.  In defense counsel's closing argument, counsel told the jury that Petitioner did not know just how the clip came off the murder weapon and fell into the car, but that Petitioner thought that the weapon might have "hit here and fallen off inside the car.  That's an explanation he came up with . . . that's all he can think how that happened."  <u>Id.</u> at 674-75.  The jury was instructed on second-degree murder, voluntary manslaughter, involuntary manslaughter, and armed criminal action.

## Direct Appeal

On direct appeal, Petitioner argued that the trial court erred in the following five ways: (1) proceeding to trial once double jeopardy attached and without jurisdiction in that the state failed to file an amended information after the first convictions were overturned; (2) excluding the testimony of Buchek and Whitbey which would have been probative on the issue of the reasonableness of Petitioner's fear of Jones and Petitioner's subsequent actions taken in self-defense; (3) allowing the prosecutor's demonstration during cross-examination of Petitioner; (4) submitting a different version of a self-defense instruction than that offered by Petitioner; and (5) overruling Petitioner's motion for a directed verdict because the State's reliance on Alexander's testimony was faulty under the doctrine of "destructive contradictions"[2] in that her testimony was so inconsistent with her prior testimony at the first trial as to render it worthless, and without her

---

[2]  As recognized by Missouri courts, this doctrine provides that:

a witness's testimony loses probative value when his or her statements at trial are so inconsistent, contradictory and diametrically opposed to one another that they rob the testimony of all probative force.  It is properly invoked only when the testimony is so inherently incredible, self-destructive or opposed to known physical facts on a vital point or element that reliance on the testimony is necessarily precluded.  Mere discrepancies or conflicts are insufficient to invoke the doctrine; rather, such inconsistencies in testimony simply affect the weight of the testimony and create questions for jury resolution.

State v. Davison,  46 S.W.3d 68, 79 (Mo. Ct. App. 2001) (internal quotations and citations omitted).

testimony, the State failed to prove that Petitioner "knowingly," as opposed to accidently, caused the death of the victim. (Resp. Ex. 12.)

The Missouri Court of Appeals denied all five points. It first noted that issues regarding the court's subject matter jurisdiction and the sufficiency of the information involved two distinct concepts. The appellate court held that the trial court had subject matter jurisdiction to try the case, and also that the amended second information was sufficient for due process purposes because it put Petitioner on notice of the second-degree murder charge for which he was convicted, as that was a lesser-included offense of first-degree murder as charged. Moreover, there was no double jeopardy issue because Petitioner was not retried for first-degree murder after being acquitted of that charge in the first trial, and double jeopardy principles did not prohibit the state from retrying him for second-degree murder. (Resp. Ex. 14 at 4-6.)

The Missouri Court of Appeals denied Petitioner's second point on appeal regarding the two excluded witnesses because Petitioner did not lay a proper foundation to introduce evidence of Jones's prior specific acts, as Petitioner's proffered evidence did not establish that Petitioner was aware of the acts in question and the acts were not reasonably related to Petitioner's murder charge or of a quality that were capable of contributing to Petitioner's fear of Jones. Id. at 6-7.

The appellate court summarily concluded that the trial court had not abused its discretion in allowing the challenged demonstration during cross-examination of Petitioner. The court held that the self-defense instruction given to the jury comported

with Missouri Approved Instruction CR-3d 306.06 and its Notes on Use, and that the trial court acted within its discretion in refusing Petitioner's tendered instruction. And lastly, the Missouri Court of Appeals rejected Petitioner's fifth point on appeal. The court stated that it was up to the trier of fact to reconcile contradictions between a witness's trial testimony and previous testimony or statements. Furthermore, there was other evidence (besides Alexander's testimony) that Petitioner knowingly caused the victim's death, including evidence that Petitioner shot Jones four times at close range. Id. at 8-10.

**State Postconviction Proceedings**

In his amended motion for postconviction relief under Missouri Supreme Court Rule 29.15, Petitioner raised 20 claims of ineffective assistance of counsel. (Resp. Ex. 10 at 16-85.) In his appeal from the denial of postconviction relief, Petitioner asserted that the motion court erred in its ruling on 13 of these claims. As will be discussed below, the remaining seven claims were thereby procedurally defaulted. In 11 of the properly-preserved claims, Petitioner argued that trial counsel was ineffective in failing to:

(1) interview and call as a witness Mark Thiel, who witnessed Jones's threatening conduct toward Petitioner and Petitioner's fear of Jones at the bar on the night in question;

(2) file a motion in limine to exclude Alexander's testimony on the ground that the prosecution has a duty to refrain from presenting perjured testimony, under the doctrine of destructive contradictions;

(3) object to the prosecution's knowing use of perjured testimony once Alexander took the stand and proceeded to perjure herself;

(4) cross-exam Alexander with the contradictions between not only her testimony and her testimony at the first trial and preliminary hearing, but also between her testimony and the physical evidence and other testimony;

(5) object to the "repeated" introduction by the prosecution of irrelevant evidence of an uncharged offense, namely, the possession of other firearms by Petitioner;

(6) object to the prosecution's use of evidence (Petitioner's statements to the police) that the Court had ordered excluded from the trial;

(7) object to the misleading demonstration by the prosecution's firearms expert to show that Petitioner could not have been telling the truth when he claimed that bullets discharged from the murder weapon when it struck the door sill of the car;

(8) object when the prosecutor misled the jury by the "unsworn testimony" that there were photographs of Alexander's neck taken on the day of the crimes;

(9) refrain from stating in closing argument that Petitioner was inventing his explanations for why the magazine dislodged from the weapon during the confrontation with Jones;

(10) investigate Petitioner's charge of jury pollution after Petitioner told counsel that his late mother told him about communications between an alternate juror and an individual who had been in jail with Petitioner, regarding Petitioner's previous convictions and sentences for the same crimes; and

(11) follow through on Petitioner's request that she file a motion for change of judge for the second trial.

Petitioner also asserted that direct appeal counsel was ineffective for failing to argue on appeal that (1) the prosecution's use of Petitioner's statements to the police, which the trial court had ordered excluded, violated his right to a fair trial; and (2) that the prosecution's firearms expert's misleading demonstration was improper.

Without holding an evidentiary hearing, the motion court denied all of Petitioner's claims.[3]  Addressing Petitioner's first claim, regarding defense counsel's failure to call Thiel as a witness, the court noted that it had not allowed Thiel to present his testimony at the first trial based on State v. Waller, 816 S.W.2d 212, 214-15 (Mo. 1991) (holding that evidence of a murder victim's reputation for violence is admissible on the issue of self-defense, as relevant to show who was the aggressor and whether a reasonable apprehension of danger existed; but such evidence must be proved by general reputation testimony, not specific acts of violence, and the defendant must show he knew of such reputation).  The court reasoned that counsel was not ineffective for failing to try to introduce evidence that the court had already ruled (in the first trial) was precluded and that the state court of appeals agreed should have been excluded.  The court further concluded that Thiel's testimony would not have provided Petitioner with a viable defense based on self-defense.  (Resp. Ex. at 10 at 106-07.)

---

[3]     The motion court adopted verbatim (correcting some typographical errors by interlineation) the State's proposed findings of fact and conclusions of law which the motion court had asked the prosecutor to prepare.

With respect to Alexander's testimony, the court noted that the appellate court had already considered, on direct appeal, the "destructive contradictions" claim that Alexander's testimony was perjury. The motion court stated further that Petitioner did not present facts demonstrating that Alexander's testimony was perjury or that the state knowingly used perjured testimony. The court held that the claim that defense counsel was ineffective in his cross-examination of Alexander was refuted by the record which showed that counsel did ask Alexander about her prior statements to the police and her testimony at the preliminary hearing and at the first trial. Id. at 707-08.

The court rejected Petitioner's claim that counsel was ineffective for failing to object to the mention of other guns during cross-examination of Petitioner, because the evidence was neither repeated nor improper. The claim regarding the prosecution's use of Petitioner's statements to the police was rejected on the ground that the trial court had ruled that Petitioner could not use his own self-serving statements, and not that the state could not use them. The court next held that defense counsel's request that the weapons expert perform a demonstration that more closely recreated the conditions testified to by Petitioner was proper trial strategy. Id. at 709-11.

The claim regarding "unsworn testimony" by the prosecutor about photographs of Alexander's neck was rejected on the ground that the citation to the record provided by Petitioner and the motion court's own review of the record did not reveal any such testimony. The motion court also found that the transcript of defense counsel's closing argument refuted Petitioner's claim that counsel was ineffective for telling the jury that

Petitioner invented his story that the bullets became dislodged from the magazine. The court then held that Petitioner did not allege facts demonstrating that an alternate juror ever told the jurors who deliberated what Petitioner's sentence had been in the first trial. The court noted that the jurors were instructed not to discuss the case until it was given to them. Id. at 112.

The court held that there was no legal basis for filing a motion for change of judge and thus counsel could not be faulted for withdrawing the motion for a change. Id. at 113. Lastly, the motion court rejected Petitioner's two claims of ineffective assistance of direct appeal counsel, concluding that the result of the appeal would not have been different had the two claims urged by Petitioner been raised. Id. at 116.

The Missouri Court of Appeals affirmed the denial of postconviction relief. The appellate court stated as to most of Petitioner's claims that they were not properly preserved for appellate review because in his appellate brief, Petitioner did not provide any legal authority to support his claims. Nevertheless, the appellate court reviewed the motion court's findings and conclusions on each of the 13 claims noted above, and denied each claim on essentially the same grounds as had the motion court. With regard to the claim that defense counsel was ineffective for failing to pursue the motion for change of judge, the appellate court noted that Petitioner did not allege facts supporting a conclusion that the judge was actually biased due to having presided over the first trial, but rather that Petitioner merely speculated that such would be the case. (Resp. Ex. 15.)

**Federal Habeas Petition**

For federal habeas relief, Petitioner re-asserts his jurisdiction/double jeopardy claim and the 20 ineffective assistance of counsel claims that he raised in his amended postconviction motion in state court.

## DISCUSSION

**Procedural Default**

Respondent argues that Petitioner's ineffective assistance of counsel claims not pursued on appeal from the denial of state postconviction relief are not properly before this court because they were procedurally defaulted in state court. This Court agrees. Under the doctrine of procedural default, a state prisoner is generally barred from obtaining federal habeas relief on claims that were procedurally defaulted in state court, that is, claims that were not properly presented through "one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see also Wemark v. Iowa, 322 F.3d 1018, 1020-21 (8th Cir. 2003). A Missouri inmate procedurally defaults claims which should have been but were not raised on appeal from the denial of a motion for post-conviction relief. Moore-El v. Luebbers, 446 F.3d 890, 897-98 (8th Cir. 2006) (holding that a Missouri inmate's failure to raise a claim on appeal from the denial of state post-conviction relief constitutes a procedural default of that claim). Thus, here, the postconviction claims that Petitioner did not pursue on appeal from the denial of postconviction relief were defaulted in state court.

A habeas petitioner can overcome the procedural bar to federal habeas review of a defaulted claim by demonstrating (1) both cause for the default and actual prejudice therefrom, or (2) that the failure to review the federal claim will result in a fundamental miscarriage of justice. The "miscarriage of justice" exception permits review of a defaulted claim where a constitutional violation has probably resulted in the conviction of one who is factually "actually innocent." House v. Bell, 547 U.S. 518, 522 (2006) (citing Schlup v. Delo, 513 U.S. 298, 319-22 (1995)). To show a "miscarriage of justice" in this context requires "new reliable evidence" that was not presented at trial and that makes it "more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Id.; see also Abdi v. Hatch, 450 F.3d 334, 338 (8th Cir. 2006).

In his traverse, Petitioner appears to suggest that Respondent's position with regard to procedural default relies upon the state appellate court's statement made when reviewing the denial of postconviction relief, that many of Petitioner's claims were not properly preserved for appellate review because Petitioner did not provide legal authority to support them. But, as noted above, the appellate court then addressed the merits of those claims, and it is only the claims that Petitioner did not raise at all on appeal that Respondent argues, and this Court finds, were procedurally defaulted. Petitioner's suggestion that the failure to raise certain claims on appeal should be excused because the page limits imposed by the state courts did not allow counsel to raise all available claims is without merit.

As there is no constitutional right to counsel in state postconviction proceedings, the ineffective assistance of postconviction counsel on appeal cannot constitute cause to excuse a procedural default. Interiano v. Dormire, 471 F.3d 854, 857 (8th Cir. 2006) (holding that Missouri prisoner's claim raised in his pro se postconviction motion, but not pursued by appointed counsel or raised on appeal from the denial of the motion, was defaulted) (citing Osborne v. Purkett, 411 F.3d 911, 919-20 (8th Cir. 2005)); Winfield v. Roper, 460 F.3d 1026, 1034 (8th Cir. 2006).

Thus, this Court is barred from considering the merits of Petitioner's claims that were not pursued on appeal from the denial of postconviction relief, and the Court will turn to consider the merits of his double jeopardy claim and the 13 claims of ineffective assistance of counsel that were presented to the Missouri Court of Appeals.

**Standard of Review for Claims Properly before the Court**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a claim has been adjudicated on the merits in state court, an application for a writ of habeas corpus cannot be granted unless the state court adjudication

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

The term "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court]'s decisions as of the time of the relevant state-court decision." Carey v. Musladin, 549 U.S. 70, 74 (2006) (citation omitted). A decision by a state court is "contrary to" clearly established federal law if it "'applies a rule that contradicts the governing law set forth in [Supreme Court] cases'" or if it "'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent.'" Price v. Vincent, 538 U.S. 634, 640 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 405 (2000)). A state court "unreasonably applies" clearly established federal law when it "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

> A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly. Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner.

Price, 538 U.S. at 641(internal quotations and citations omitted); see also Barnett v. Roper, 541 F.3d 804, 811 (8th Cir. 2008).

The factual findings of the state court also may be challenged in a § 2254 petition, but they are subject to "an even more deferential review." Kinder v. Bowersox, 272 F.3d 532, 538 (8th Cir. 2001). Factual findings by the state court "shall be presumed to be correct," a presumption that will be rebutted only by "clear and convincing evidence." Id.; § 2254(e)(1).

**<u>Trial Court's Jurisdiction/Double Jeopardy</u>**

Petitioner argues that because the state did not file an amended information after the first convictions were overturned, the trial court lacked jurisdiction to retry him and the second trial violated his double jeopardy rights. "The constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." <u>Green v. United States</u>, 355 U.S. 184, 187 (1957); <u>see also</u> <u>United States v. Howe</u>, 538 F.3d 820, 824 (8th Cir. 2008). Here, Petitioner was acquitted of first-degree murder in the first trial and could not have been tried again for first-degree murder. <u>See id.</u> And indeed he was not. As noted above, the second jury was only instructed on second-degree murder and its lesser included offenses. Because the ground for reversal of the second-degree murder conviction by the first jury was not that the evidence was insufficient to convict, double jeopardy did not preclude the second trial for second-degree murder. <u>See</u> <u>Howe</u>, 538 F.3d at 825-26 (explaining that double jeopardy does not prohibit retrial on a lesser included offense where a jury acquitted the defendant of the greater offense but hung on the lesser offense that had been included in the original indictment); <u>Palmer v. Clarke</u>, 408 F.3d 423, 443 n.14 (8th Cir. 2005) (explaining that under the "clean slate" rule, where a defendant succeeds in overturning his conviction, there is no double jeopardy bar to retrial, unless the ground for the reversal was that the evidence was insufficient to convict) (citation omitted).

Petitioner has offered no authority for the proposition that the state's failure to amend the information before the second trial rendered the second trial a violation of

double jeopardy. Nor has this Court found any precedent, much less any "clearly

established Federal law, as determined by the Supreme Court of the United States," that

would support that proposition or the proposition that the failure to amend the information

somehow deprived the trial court of jurisdiction to proceed with the second trial.

Accordingly, habeas relief on this claim should be denied. See Price, 538 U.S. at 641

(holding that federal habeas relief was not available where the state court reasonably

adjudicated the petitioner's double jeopardy claim).

**Ineffective Assistance of Defense Counsel**

The Sixth Amendment guarantees a criminal defendant the right to effective

assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). To prevail on

a claim of ineffective assistance of counsel, a habeas petitioner must show that "counsel's

representation fell below an objective standard of reasonableness," and that "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." Id. at 689.

Moreover, in the context of a § 2254 petition, a petitioner "'must do more than show

that he would have satisfied Strickland's test if his claims were being analyzed in the first

instance. Under AEDPA, he must establish that the state court 'applied Strickland to the

facts of his case in an objectively unreasonable manner.'" Ringo v. Roper, 472 F.3d 1001,

1003 (8th Cir. 2007) (quoting Bell v. Cone, 535 U.S. 685, 698-99 (2002)).

Here, upon review of the entire record, the Court concludes that except with respect

to one claim, the state courts did not unreasonably apply Strickland in rejecting Petitioner's

claims of ineffective assistance of defense counsel.  With regard to the claim that trial counsel was ineffective for failing to object to the prosecutor's reference to photographs of Alexander's neck, the state courts held that the record contained no such reference, and that Petitioner's record citation (Resp. Ex. 10 at 60) showed no such reference.  Petitioner's record citation, however, was to a related claim of error -- not this claim, and the state courts apparently did not find the prosecutor's comment in closing argument about the photographs.  This comment by the prosecutor, however, does indeed appear in the record. (Resp. Ex. 4 at 655-56).

In any event, however, the Court concludes that this claim by Petitioner is without merit.  While the prosecutor's comment was improper, even had defense counsel objected successfully, there was no reasonable probability that the outcome of the trial would have been different.  The prosecutor's comment did not render the trial fundamentally unfair and did not render the resulting conviction a denial of due process.  See Middleton v. Roper, 455 F.3d 838, 850 (8th Cir. 2006) (rejecting claim of ineffective assistance of counsel for failing to object to prosecutor's closing argument where argument did not make the trial fundamentally unfair).  Moreover, the jury was instructed that it was their duty to determine the facts only from the evidence and the reasonable inferences to be drawn therefrom, and that the attorneys' closing arguments were not evidence.  (Resp. Ex. 6 at 57, 75.)

The remaining claims of ineffective assistance of defense counsel were all reasonably adjudicated by the state courts both factually and legally, thereby precluding

federal habeas relief.  See, e.g., Garcia v. Bertsch, 470 F.3d 748, 755-56 (8th Cir. 2006)

(holding that state appellate court's determination that habeas petitioner was not prejudiced

by counsel's allegedly deficient failure to report alleged juror contact with non-jurors

during trial was not contrary to or unreasonable application of clearly established federal

law; there was no evidence that alleged conversations involved communication about

matters pending before jury so that "any claim that the outcome of the trial would have

been different amounts to nothing more than utter speculation," and guilty verdict was

supported by ample evidence); Bounds v. Delo, 151 F.3d 1116, 1119 (8th Cir. 1998)

(holding that defense counsels' failure to object to certain testimony did not constitute

ineffective assistance, absent any reasonable probability that the result of the trial would

have been different had counsel successfully objected to the testimony).  In particular, the

Court's review of the record convinces the Court that defense counsel's cross-examination

of Alexander did not constitute deficient performance.  See, e.g., Carroll v. Schriro, 243

F.3d 1097, 1100 (8th Cir. 2001) (rejecting habeas petitioner's claim that defense counsel's

cross-examination of state's witnesses was constitutionally ineffective, where transcript

showed that counsel's cross-examination was reasonable).

**Ineffective Assistance of Direct Appeal Counsel**

When a claim of ineffective assistance of counsel involves direct appeal counsel, a

habeas petitioner must show that "there is a reasonable probability that the result of the

direct appeal would have been different if the argument had been made."  Carter v.

Bowersox, 265 F.3d 705, 713-714 (8th Cir. 2001) (citation omitted).  "When appellate

counsel competently asserts some claims on a defendant's behalf, it is difficult to sustain an ineffective assistance claim based on allegations that counsel was deficient for failing to assert some other claims." Link v. Luebbers, 469 F.3d 1197, 1205 (8th Cir. 2006) (citation omitted). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Id.

The Court concludes that the state courts very reasonably determined that direct appeal counsel's failure to raise claims regarding the prosecutor's use of Petitioner's statements which had been ordered excluded and the use of demonstrative evidence by the firearms expert did not constitute ineffective assistance.


## CONCLUSION

Petitioner is not entitled to federal habeas relief. The Court does not believe that this is a case in which "reasonable jurists" might find the Court's procedural or substantive decisions "debatable or wrong," for purposes of issuing a Certificate of Appealability under 28 U.S.C. §2254(d)(2). See Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (explaining standard for issuing Certificate of Appealability) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)); Langley v. Norris, 465 F.3d 861, 862-63 (8th Cir. 2006) (same).

Accordingly,

**IT IS HEREBY RECOMMENDED** that the petition of Demetrius Battle, for habeas corpus relief be **DENIED**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability should

not issue in this case.

The parties are advised that they have ten (10) days in which to file written

objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless

an

extension of time for good cause is obtained, and that the failure to file timely objections

may result in a waiver of the right to appeal questions of fact.


_AUDREY G. FLEISSIG_
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated this 12th day of February, 2009.